IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAY D. BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV99 |
| | ) | |
| CHARLOTTE MOTOR SPEEDWAY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This employment discrimination case comes before the Court on a Motion to Compel Arbitration, to Dismiss, or, alternatively, to Stay Proceedings Pending Arbitration [Doc. #2] filed by Defendant Charlotte Motor Speedway, LLC ("Defendant or Defendant CMS") pursuant to the Federal Arbitration Act. In response to the Motion, Plaintiff contends that the Arbitration Agreement cited by Defendant should not be enforced because it was entered into between Plaintiff and Speedway Motorsports, Inc. ("SMI"), Defendant CMS's parent corporation. For the reasons set forth below, the Court recommends that Defendant's Motion to Compel Arbitration be granted and that this action be dismissed without prejudice in favor of arbitration.

I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff originally filed his Complaint in North Carolina state court against his former employer, Defendant CMS, alleging age discrimination and disability discrimination. Defendant CMS removed it to this Court [Doc. #1] based upon federal question jurisdiction and supplemental jurisdiction.

In his Complaint [Doc. #4], Plaintiff alleges that he was employed by Defendant Charlotte Motor Speedway, LLC, a North Carolina corporation, on or about July 19, 2006. He worked as a mechanical engineer (HVAC technician) at Defendant's Concord, North Carolina, facility. Plaintiff alleges that his workload increased significantly shortly after he was hired. In July 2010, Plaintiff was "placed under SMI Property Operations" and began working under new supervisors who "constantly disciplined" him, ridiculed him, and "had an overall disrespectful attitude toward Plaintiff." (Id. ¶ 16-17.) Plaintiff alleges that his requests for help in completing his duties were almost always denied, and that other employees were not treated in the same manner. Also in June or July 2010, Plaintiff was diagnosed with stage 3 cancer. Plaintiff alleges that after his diagnosis, his workplace became even more hostile and his job duties were taken away from him due to "false accusations regarding his illness and because of his age." (Id. ¶ 21.) On or about July 19, 2011, Plaintiff's job position was eliminated, and Plaintiff was terminated at age 56.

Plaintiff's first claim for relief is for age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and the common law of North Carolina. Plaintiff's second claim for relief is for disability discrimination in violation of the Americans with Disabilities Act Amendments Act (ADAAA) and the common law of North Carolina. Finally, Plaintiff's third claim for relief is for wrongful discharge under North Carolina law. Plaintiff seeks damages and declaratory and injunctive relief.

Defendant CMS moves to dismiss or stay this action based upon a "Binding Arbitration Agreement" [Doc. #2-1 at 3] signed by Plaintiff on July 17, 2006, on or about the same date that

he began employment with CMS. The Agreement shows that it is between the "Company," identified as SMI, and the "Employee," identified as Plaintiff. Defendant notes by affidavit that CMS is a wholly-owned subsidiary of SMI, and Plaintiff does not dispute that affiliation.

In the Agreement, Plaintiff acknowledges that the Company "utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context." (Id.) Plaintiff and the Company agreed:

> that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment . . . including . . . claims under Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act . . .) that we may have against one another which would otherwise require or allow resort to any court or other governmental dispute resolution forum between [Plaintiff] and the Company (or its owners, parent companies, affiliates, directors, officers, managers, associates, agents, and parties affiliated with its associate benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company . . . shall be submitted to and determined exclusively by binding arbitration.

The Agreement also provides that any arbitration under the Agreement "shall be solely conducted between the above parties to include their owners, affiliates, directors, officers, managers, associates, agents" and other parties affiliated with associated benefit and health plans. (Id.)

In response to Defendant's Motion to Compel Arbitration under this Agreement, Plaintiff argues that he entered into the Agreement with SMI and not Defendant CMS. Because his employer was Defendant CMS, Plaintiff contends that the Arbitration Agreement is not enforceable in this action. Defendant CMS responds by arguing that although it is not a

3

signatory to the Arbitration Agreement, it may enforce the Agreement against Plaintiff because the Agreement expressly includes affiliates of SMI, which would include CMS.

II. DISCUSSION

Under the Federal Arbitration Act, a written agreement to arbitrate in a contract involving commerce "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. If a lawsuit is brought on "any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In addition, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In considering a Motion to Compel Arbitration under the FAA, the Court must first find that a valid arbitration agreement exists between the parties. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). If so, the Court must then decide whether the parties' dispute falls within the scope of the agreement. Id. State law principles governing contract formation apply in determining whether the parties agreed to arbitrate. Id. State law principles are likewise used to determine whether a party that was not a signatory to the contract may nevertheless invoke an arbitration clause of the contract. Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or

4

contract."). In considering the enforcement of an arbitration agreement by or against a non-signatory, the Supreme Court has noted that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 630-31. (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). Thus, "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the [FAA's] terms are fulfilled." Id.[1]

Here, by affidavit, Defendant notes that Plaintiff was hired by CMS on or about the same date that he signed the Arbitration Agreement, and Defendant further notes that Plaintiff signed the Agreement in connection with his employment with CMS. In addition, although the "Company" in the Agreement is designated as SMI, Defendant by affidavit asserts that CMS is a wholly-owned subsidiary of SMI. Defendant notes that the Arbitration Agreement specifically includes "affiliates" of SMI as entities potentially involved in employment-related disputes covered by the Agreement.[2] Finally, the Agreement specifically pertains to resolution of disputes in the "employment context," including various employment discrimination claims, and those provisions would necessarily be for the benefit of Plaintiff's employer. As Defendant contends,

---

[1] Under the forum state's choice-of-law rule, North Carolina applies its law to contracts that are formed in North Carolina. Tanglewood Land Co. v. Wood, 252 S.E.2d 546, 550 (N.C. Ct. App. 1979). In this case, it appears that the Agreement was executed in North Carolina, and the parties both cite North Carolina law on this issue. Therefore, the Court will apply North Carolina contract law.

[2] An "affiliate" is defined by Black's Law Dictionary to include a "subsidiary, parent, or sibling corporation," which would include CMS as a subsidiary of SMI. Black's Law Dictionary (9th ed. 2009).

5

the Agreement thus indirectly but explicitly includes CMS as an affiliate, and the Agreement was intended to confer a legally enforceable benefit upon Defendant CMS.

Plaintiff nevertheless argues that because CMS was not a signatory to the agreement, the contract is unenforceable. (See Pl.'s Resp. [Doc. #9] at 3 ("Under North Carolina contract law, a contract is binding between the parties who are signatories. In this case, Plaintiff signed a contract with SMI. . . . Consequently, this Arbitration Agreement being produced by Defendant [CMS] is unenforceable in this action as the contract is not between the Plaintiff and his employer.").) Plaintiff's argument is unpersuasive. As Defendant notes, the Agreement, on its face, expressly covers affiliates. Moreover, "[a]s the North Carolina Court of Appeals has observed, '[t]he FAA requires that agreements to arbitrate be in writing, however, such agreements need not be signed.'" SCS Statesville Maple Leaf Operating Co. v. Morgan, No. 5:11CV184, 2012 WL 3112405, at *3 (W.D.N.C. July 31, 2012) (citing Howard v. Oakwood Homes Corp., 516 S.E.2d 879, 882 (N.C. App. 2000) (additional citations omitted)). Indeed, in similar circumstances, the Fourth Circuit has compelled arbitration. See Long, 248 F.3d at 320 (allowing shareholder defendants to compel arbitration pursuant to an agreement between the plaintiff and the shareholders' corporation).[3] Moreover, although CMS was not explicitly named in the Agreement, the Agreement evidences a clear intent to include SMI's affiliates, which includes CMS, and North Carolina cases provide that an entity may be a third-party beneficiary without being specifically named in the underlying contract. See, e.g., Sykes v.

---

[3] District courts following the laws of other states have come to similar conclusions. See Richert v. National Arbitration Forum, LLC, No. 09-763, 2009 WL 3297565 (D. Minn. Oct. 13, 2009) (allowing non-signatory affiliates to invoke arbitration clause where the agreement "included plain language that encompasses claims asserted by [Plaintiff] against 'any agent or affiliate'" of the signing party).

6

Keiltex Indus., Inc., 473 S.E.2d 341 (N.C. Ct. App. 1996); Runnels v. Robinson, 711 S.E.2d 486 (N.C. Ct. App. 2011).

Plaintiff relies upon two cases in arguing that Defendant CMS should not be able to enforce the Agreement, both of which are distinguishable. First, in Huffman v. Sticky Fingers, Inc., No. 2:052108DCNGC, 2006 WL 895029 (D.S.C. Mar. 31, 2006), the plaintiff signed a job application and agreement to arbitrate with Employment Dispute Services, Inc., but worked for Wedge, Inc. d/b/a Sticky Fingers. The court found that the arbitration agreement was invalid under state law because it was not properly executed and witnessed as required by its terms. The court also noted that the Agreement was between EDSI and Plaintiff. Wedge contracted with EDSI for dispute resolution services, but Wedge was not an affiliate or successor of EDSI. Although the employing Company was the intended third-party beneficiary of the Agreement, the Agreement did not identify the Employer or Company at all. Here, in contrast, the Agreement identifies SMI as the Company, and it is undisputed that CMS is an affiliate of SMI.

In the second case cited by Plaintiff, Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392 (4th Cir. 2005), the court considered whether equitable estoppel allowed Republic Mortgage to claim the benefit of the arbitration agreement entered into between the plaintiff and an unrelated entity. 424 F.3d at 395. In Brantley, the court concluded that equitable estoppel would not apply where the plaintiffs had entered into the arbitration clause with their mortgage lender, a separate entity from Republic, and the contract made no reference to Republic nor to the plaintiffs' mortgage insurance transaction with Republic. The court concluded that the claims in that case were claims related to Republic's insurance premiums, and those claims were

7

"wholly separate" from the mortgage agreement containing the arbitration clause.  The court further concluded that Republic could not enforce the Agreement as a third-party beneficiary because the language of the contract did not clearly indicate that at the time of contracting, the parties intended to provide Republic with a direct benefit.  Brantley, 424 F.3d at 396-97.  Here, in contrast, the language of the contract clearly indicates an intent to include and benefit SMI's affiliates, which would include CMS.

In sum, having considered the Parties' contentions, the Court concludes that a valid arbitration agreement exists between SMI and Plaintiff which Defendant CMS may enforce against Plaintiff under state law contract principles, based on the explicit inclusion of SMI's affiliates in the contract provisions, as well as the clear intent to benefit and include CMS as an intended third party beneficiary.  In addition, the Court notes that Plaintiff makes no argument that his claims fall outside the scope of the arbitration agreement.  Because Plaintiff's causes of action are specifically included in the agreement, any such argument would be futile.  Plaintiff must therefore arbitrate his claims against Defendant CMS according to the terms of the Arbitration Agreement.

Finally, the Court notes that Defendant's Motion seeks dismissal of this action or a stay of this action pending arbitration.  Courts in this district have dismissed without prejudice cases in which all of the plaintiff's claims were subject to arbitration.  Pinnacle Benefits Grp., LLC v. Am. Republic Ins. Co., No. 1:13CV186, 2013 WL 6894878 (M.D.N.C. Dec. 31, 2013); McLaughlin v. Inmar, Inc., No. 1:11-cv-983, 2012 WL 7176855 (M.D.N.C. Feb. 13, 2012).

Because all of Plaintiff's claims arise from his employment with Defendant CMS, all of his claims are subject to arbitration and dismissal without prejudice of this action is proper.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Compel Arbitration and to Dismiss or Stay this Action [Doc. #2] be granted, and that this action be dismissed without prejudice in favor of arbitration.

This, the 26th day of November, 2014.

                                            /s/ Joi Elizabeth Peake
                                            United States Magistrate Judge